IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LAUCE ROBERTO LOPEZ,

   **Plaintiff,**

        v.

ADAN AGOSTINI-GRACIA, *et al.*,

   **Defendants.**

CIVIL NO. 22-1650 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is Defendant Adan Agostini-Gracia's ("Defendant") Motion for Summary Judgment, Docket No. 42; and Plaintiff Lauce Roberto Lopez's ("Plaintiff") Opposition, Docket No. 46. For the following reasons, the Motion for Summary Judgment is hereby **DENIED**.

## STANDARD OF REVIEW

The Court will grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Under this standard, a fact is in "genuine" dispute if it could be resolved in favor of either party; and "material" if it potentially affects the outcome of the case. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)).

The party requesting summary disposition bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving

**CIVIL NO.** 22-1650 (JAG)                                                                     2

party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (citation omitted). The non-movant must then demonstrate "through submissions of evidentiary quality . . . that a trial worthy issue persists." *Iverson v. City of Bos.*, 452 F.3d 94, 98 (1st Cir. 2006) (citations omitted).

In evaluating a motion for summary judgment, the Court must view the entire record "in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Winslow v. Aroostook Cty.*, 736 F.3d 23, 29 (1st Cir. 2013) (citation omitted). The Court, however, may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 134 (1st Cir. 2013) (citation omitted). And it cannot make credibility determinations or weigh the evidence, as these are jury functions and not those of a judge. *See Anderson*, 477 U.S. at 255; *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 99 (1st Cir. 2014) (citations omitted).

## FINDINGS OF FACT

The Court makes the following factual findings based on the Parties' filings and the evidence on record. In accordance with Local Rule 56(e), the Court only credits facts properly supported by specific and accurate record citations. The Court has also disregarded all argumentative and conclusory allegations, speculations, and improbable inferences disguised as

**CIVIL NO.** 22-1650 (JAG)                                                                                                  3

facts. *See Forestier Fradera v. Mun. of Mayaguez*, 440 F.3d 17, 21 (1st Cir. 2006); *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).[1]

1. On May 3, 2021, the Court of First Instance of Puerto Rico, San Juan Part, issued a one-year Order of Protection under the Act Against Stalking, Case No. SJL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, in favor of Plaintiff's neighbor Mr. Edgardo Arcaya Rodríguez ("Mr. Arcaya") and against Plaintiff. Both parties were present in court and were notified of the Order. Docket Nos. 43 at 1; 46-1 at 1.

2. The Order of Protection was based on a judicial determination that Plaintiff engaged in a pattern of stalking against Mr. Arcaya, including throwing poison and stones at Mr. Arcaya's residence. The Order instructed Plaintiff to refrain from harassing, persecuting, intimidating, threatening, or otherwise interfering with Mr. Arcaya or members of his family. Docket Nos. 43 at 1; 46-1 at 1.

3. On January 2, 2022, at around 4:00 PM, Plaintiff was at his home in Rio Piedras, Puerto Rico. Docket No. 46-1 at 3.

4. The residents in Mr. Arcaya's house had been playing extremely loud music since noon that day. *Id.*

5. Plaintiff called the police to complain about the loud music coming from Mr. Arcaya's residence. Docket Nos. 43 at 2; 46-1 at 1.

6. Around 45 minutes later, Defendant arrived at the scene and talked to Plaintiff. Docket Nos. 43 at 2; 46-1 at 2-4.

---

[1] Defendant failed to oppose Plaintiff's Statement of Additional Uncontested Facts and, thus, those facts are uncontested.

**CIVIL NO.** 22-1650 (JAG) 4

7. From inside his locked gate, Plaintiff told Defendant he had arrived too late and that the music had already stopped. Docket No. 46-1 at 4.

8. Plaintiff never exited his residence. *Id.*

9. Defendant then proceeded to walk to Mr. Arcaya's house, where the loud music had been playing, and talked to Mr. Arcaya. *Id.*

10. After talking with Mr. Arcaya, Defendant walked back to the front of Plaintiff's house and told Plaintiff to come out of his house in a rough manner. *Id.*

11. Plaintiff felt threatened by Defendant's approach and asked Defendant to say what he needed to say from outside of his house. *Id.*

12. Defendant got angry and yelled at Plaintiff that he was making this hard for himself. *Id.*

13. Plaintiff then retreated into his house. *Id.* at 2,4; Docket No. 43 at 2.

14. Plaintiff was never told that he was under arrest or that he had to come out of his house to be arrested. Docket No. 46-1 at 5.

15. As Plaintiff was getting ready to shower, police officers entered Plaintiff's residence without a warrant, located him in the bathroom, and placed him under arrest. *Id.* at 3, 5; Docket No. 43 at 2.

16. The first police officer to enter the bathroom immediately pointed a rifle at Plaintiff. Docket No. 46-1 at 5.

17. Several additional police officers proceeded to enter Plaintiff's bedroom. *Id.*

18. Defendant threw Plaintiff against a wall and proceeded to handcuff him, injuring his neck in the process. *Id.*

**CIVIL NO.** 22-1650 (JAG)                                                                 5

19. At the time of his arrest, Plaintiff was 77 years-old, 5'5 feet tall, and only weighed 126 pounds. He was unarmed. *Id.* at 5-6.

20. Plaintiff was taken to a police station and officers refused to tell him why he was being arrested, so he exercised his rights and refused to talk to them. *Id.* at 6.

21. Plaintiff asked to call his attorney, but Defendant ignored him. *Id.*

22. Plaintiff was held in a cell without a bed until noon of the next day. *Id.*

23. Plaintiff suffers from numerous physical ailments and medical conditions due to his advanced age, but he was not given access to his medications despite asking Defendant for the medications. *Id.*

24. Plaintiff was charged with a felony violation of Act 284, Art. 4.B.4 (violation of a protective order) and a misdemeanor for disturbing the peace under P.C. Art. 241.B. *Id.* at 3; Docket No. 43 at 3.

25. The day after his arrest, Plaintiff was taken before a Municipal Judge of the Court of First Instance and, for the first time, the court informed Plaintiff that he was arrested because Mr. Arcaya claimed that Plaintiff had called him a "cabron"[2] in violation of the protective order issued some months prior. Docket No. 46-1 at 7.

26. The Municipal Judge found probable cause for Plaintiff's arrest and set bail at $1,000.00, which Plaintiff posted. *Id.* at 3, 7; Docket No. 43 at 3.

27. The criminal charges against Plaintiff were later dismissed. Docket Nos. 43 at 3; 46-1 at 3.

---

[2] This term roughly translates to "bastard" or "asshole."

# ANALYSIS

## I. Qualified Immunity

Defendant argues that he is entitled to qualified immunity. Docket No. 42 at 9-10. The Court already ruled that Defendant is not protected by qualified immunity. Docket No. 29 at 9. Specifically, in denying Defendant's Motion to Dismiss, the Court found as follows:

> To determine whether an officer is entitled to qualified immunity, the Court must decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Here, the first prong of the qualified immunity analysis is satisfied . . . Plaintiffs have established a cognizable Fourth Amendment claim. "[T]he Fourth Amendment has drawn a firm line at the entrance to the house." *Payton*, 445 U.S. at 590. As such, the Supreme Court has held that "[n]o reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 564 (2004) (citing *Payton*, 445 U.S. at 586-88). The behavior described in the pleadings is exactly the conduct that the Fourth Amendment was intended to prevent. Taking Plaintiff's well-plead allegations as true, Officer Agostini's conduct was a clear violation of constitutional law that has been firmly established since the late 1800s. When officers disregard constitutional rights, they undermine the authority of law enforcement and erode community trust. Officers, by the nature of the authority entrusted to them, must honor, and protect every citizen's rights. Therefore, Officer Agostini is not entitled to qualified immunity at this juncture.

*Id*. Plaintiff has presented evidence supporting the allegations in the Amended Complaint. Defendant has not put forth any evidence refuting Plaintiff's version of the events, which supports a finding that Defendant violated Plaintiff's clearly established constitutional rights. Thus, Defendant has failed to show that the Court should reconsider the determination that he is not entitled to qualified immunity.

**CIVIL NO.** 22-1650 (JAG)                                                                                               7

## II.   Section 1983

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (cleaned up). To prevail in a § 1983 suit, a plaintiff must establish that the defendant, acting under color of state law, deprived him of a federal right. *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011) (citation omitted). A defendant has acted under color of state law if he has abused the power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49-50 (1988) (citation omitted). Further, to establish the deprivation of a federal right, "plaintiffs must show that the defendants' conduct was the cause in fact of the alleged deprivation." *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997) (citation omitted).

In this case, Defendant does not dispute that he acted under color of state law. Instead, he argues that Plaintiff was not deprived of a federal right because Defendant had probable cause to arrest Plaintiff and exigent circumstances justified the warrantless entry into Plaintiff's residence. The Court strongly disagrees.

First, Defendant has failed to show by a preponderance of the evidence the existence of probable cause for Plaintiff's arrest. Defendant contends that "Mr. Arcaya informed [him] that Plaintiff had just violated the protective order carrying out acts aimed at intimidating Mr. Arcaya. Mr. Arcaya presented Officer Agostini with a copy of the active protective order. Mr. Arcaya's allegation was corroborated at the scene by a witness, Ms. Nitza Torres Sáez." Docket No. 43 at 2. Defendant cites 2 exhibits to support this proposed statement of fact: the state court complaint filed as a result of Plaintiff's arrest (Case No. SJ2022CR00004-1) and a witness summons (Case No. KVA2022-0041). Docket Nos. 43-2; 43-3. This evidence, however, is insufficient for the Court

**CIVIL NO.** 22-1650 (JAG)                                                                                                        8

to make a probable cause determination. Neither the state court complaint nor the witness summons sheds any light on the specific allegations made by Mr. Arcaya (or the alleged corroborating witness) that led Defendant to believe that Plaintiff had violated the protective order. The only evidence on this issue is Plaintiff's Unsworn Declaration, where he attests that he was arrested because Mr. Arcaya claimed that Plaintiff called him a "cabrón." Docket No. 46-2 at 3. Without any factual context, it is impossible to determine whether this was sufficient to show a violation of the protective order for purposes of the probable cause analysis.

Second, the facts of this case clearly show that no exigent circumstances existed to justify the warrantless entry into Plaintiff's home. "At the [Fourth] Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Fla. v. Jardines*, 569 U.S. 1, 6 (2013) (cleaned up). "Freedom in one's own dwelling is the archetype of the privacy protection secured by the Fourth Amendment; conversely, physical entry of the home is the chief evil against which it is directed." *Lange v. California*, 594 U.S. 295, 303 (2021) (cleaned up). Therefore, "the contours of [] any [] warrant exception permitting home entry are jealously and carefully drawn, in keeping with the centuries-old principle that the home is entitled to special protection." *Id.* (cleaned up).

The exigent circumstances exception to the warrant requirement "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable. The exception enables law enforcement officers to handle emergencies—situations presenting a compelling need for official action and no time to secure a warrant." *Id.* at 301 (cleaned up). The exigency exception requires courts to evaluate the totality of the circumstances. *Id.* at 302. Only "[w]hen the totality of circumstances shows an emergency—

**CIVIL NO.** 22-1650 (JAG)                                                                                                  9

such as imminent harm to others, a threat to the officer himself, destruction of evidence, or escape from the home—the police may act without waiting." *Id.* at 308.

Here, Defendant has provided no evidence showing that "the delay required to obtain a warrant would bring about some real immediate and serious consequences—and so the absence of a warrant is excused." *Id.* at 302 (cleaned up). The record is devoid of any evidence demonstrating that there was an immediate danger or a "need to protect or preserve life or avoid serious injury." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (cleaned up). Defendant has not presented any evidence that Plaintiff posed a threat to others, nor is there any evidence showing a risk of escape or destruction of evidence. Defendant has shown no compelling need for a warrantless entry.

Defendant's argument that warrantless entry was justified under the "hot pursuit" exception fails because he has not shown that Plaintiff "was not merely stepping into [his] home but was *fleeing arrest*, requiring the officers to follow [him] in hot pursuit." *Morse v. Cloutier*, 869 F.3d 16, 27 (1st Cir. 2017) (cleaned up) (emphasis added). While it is true that "a suspect may not defeat an arrest which has been set in motion in a public place . . . by [] escaping to a private place," *United States v. Santana*, 427 U.S. 38, 43 (1976), there is simply no evidence that the arrest here was set in motion before Plaintiff retreated into his home. "That a suspect will not agree to step outside his home in response to an officer's request does not, without more, constitute exigent circumstances sufficient to authorize a warrantless entry into the home." *Morse*, 869 F.3d at 25-26 (citation omitted).

Furthermore, the Supreme Court has instructed that

> [A]n important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made. Moreover, although no exigency is

**CIVIL NO. 22-1650 (JAG)**                                                                                                   10

> created simply because there is probable cause to believe that a serious crime has been committed . . . application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense [] has been committed.

*Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984). In this case, the underlying offense was uttering a one-word insult in alleged violation of a protective order. This is a relatively minor offense, which further supports the unreasonableness of the warrantless entry.

Additionally, the aggressive manner in which the police officers arrested Plaintiff also supports a finding of unreasonableness. Plaintiff attests as follows:

> I started to get ready to take a shower since it was getting dark. That suddenly I see someone is trying to break the bathroom's lock from outside and immediately a police officer opens the door and starts pointing a rifle at me. That numerous other Police officers proceeded to enter my bedroom, and [Defendant] threw me against a wall and proceeded to handcuff me, injuring my neck with the impact. That at the time of my arrest I was 77 years old, [] 5'5 [feet tall] and weigh[ed] 126 pounds and I was clearly unarmed, inside my home and wasn't fleeing or trying to escape.

Docket No. 46-2 at 2. Defendant has not contested this version of the events. As such, the record seemingly shows that Defendant and the other police officers used excessive force when arresting Plaintiff. *See Raiche v. Pietroski*, 623 F.3d 30, 36 (1st Cir. 2010) ("The Fourth Amendment is implicated where an officer exceeds the bounds of reasonable force in effecting an arrest or investigatory stop.") (citation omitted).

Accordingly, because Defendant has not established by a preponderance of the evidence neither the existence of probable cause nor the existence of exigency, Defendant's request for dismissal is hereby **DENIED**.

**CIVIL NO. 22-1650 (JAG)**     11

III.    Supplemental State Law Claims

Finally, because the Court does not dismiss Plaintiff's federal cause of action, Defendant's request to decline the exercise of supplemental jurisdiction over Plaintiff's state law claims is hereby **DENIED**.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment is hereby **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Thursday, February 05, 2026.

<u>s/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge